UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:15-CR-42-TLS |
| | ) | |
| FREDDIE L. CHURCH, JR., | ) | |
| SHAIKI SUTTON, | ) | |
| TYLER M. MCCARTHY, | ) | |
| CHRISTIAN J. SMITH, and | ) | |
| AUTUMN J. CARTER | ) | |

**OPINION AND ORDER**

The Government has charged the Defendants with conspiracy to affect commerce by robbery, 18 U.S.C. § 1951(a) and (b) (Count 1); attempted robbery under the Hobbs Act, 18 U.S.C. § 1951(a) and (b) (Count 3); attempted entry into a credit union with the intent to commit armed bank robbery, 18 U.S.C. § 2113(a) and (d) (Count 4); and, carrying a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c) (Count 5). Two of the Defendants are charged with a separate attempt to commit armed bank robbery, 18 U.S.C. § 2113(a) and (d) (Count 2). The underlying offenses for the Count 5 charge of carrying a firearm during and in relation to a crime of violence are the attempted robbery under the Hobbs Act (Count 3) and attempted armed bank robbery (Count 4).

Three of the Defendants have moved to dismiss Count 5 of the Indictment pursuant to Federal Rule of Criminal Procedure 12. They argue that Counts 3 and 4 categorically fail to qualify as a crime of violence within the meaning of 18 U.S.C. § 924(c)(3)(A). Additionally, they contend that the residual clause of § 924(c)(3)(B) cannot be relied upon because it is unconstitutionally vague under the Supreme Court's recent decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). Therefore, Count 5 does not state an offense and must be dismissed.

## STANDARD OF REVIEW

To be sufficient, an indictment must "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). It must also cite to the applicable statute. *Id.* The Seventh Circuit has stated that an indictment "must fulfill three distinct functions. First, the indictment must state all of the elements of the crime charged; second, it must adequately apprise the defendant of the nature of the charges so that he may prepare a defense; and third, it must allow the defendant to plead the judgment as a bar to any future prosecutions for the same offense." *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000).

A defendant may allege that an indictment is defective for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). "Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009) (quoting *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006)). "To successfully challenge the sufficiency of an indictment, a defendant must demonstrate that the indictment did not satisfy one or more of the required elements and that he suffered prejudice from the alleged deficiency." *United States v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2013) (citing *United States v. Dooley*, 578 F.3d 582, 589–90 (7th Cir. 2009)). Ultimately, the question on a motion to dismiss is not whether the indictment alleges sufficient facts from which a jury could find guilt, but rather whether the government conceivably could produce such evidence at trial. *United States v. Castor*, 558 F.2d 379, 384 (7th Cir. 1977).

# ANALYSIS

## A. Relevant Statutes

### 1. *Bank Robbery*

According to the federal bank robbery statute:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or
>
> Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny–

is punishable for bank robbery. 18 U.S.C. § 2113(a). Subsection (d) addresses armed bank robbery, and sets forth the punishment for any person who "in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device." 18 U.S.C. § 2113(d).

### 2. *Hobbs Act Robbery*

An individual commits a federal crime under the Hobbs Act if he or she "obstructs, delays, or affects commerce" by (1) "robbery," (2) "extortion," or (3) "commit[ting] or threaten[ing] physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section." § 1951(a). Robbery, in turn, is defined as

> the unlawful taking or obtaining of personal property from the person or in the

> presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1).

### 3. *Firearm Statute*

Section 924(c) requires the imposition of one of a series of mandatory minimum terms of imprisonment upon conviction for misconduct involving a firearm and the commission of a federal crime of violence or a federal drug trafficking crime. As it relates to this case, to sustain a conviction under 18 U.S.C. § 924(c), the Government will be required to prove that the Defendants (1) carried a firearm and (2) did so during and in relation to a "crime of violence." Section 924(c)(3) defines a "crime of violence" as "an offense that is a felony and—(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3). Section 924(c)(3)(A) is referred to as the "force clause," while § 924(c)(3)(B) is called the "residual clause."

## B. Categorical Approach

The Defendants argue that the Court must apply a categorical approach to decide whether the charged robberies can be predicate offenses for a § 924(c) offense. The categorical approach mandates consideration of the elements of an offense without reliance on the particular facts

underlying the elements of the conviction. *Descamps v. United States*, — U.S. —, 133 S. Ct. 2276, 2283 (2013); *Taylor v. United States*, 495 U.S. 575 (1990). The Defendants claim that, under the categorical approach, the Court must acknowledge that it is possible for the charged crimes to be committed through fear of future injury (in the case of the Hobbs Act), and through intimidation (in the case of bank robbery). They assert that these modes of commission do not require the use, attempted use, or threatened use of violent physical force, and therefore do not satisfy the force clause.[1]

The Government responds that because the Hobbs Act is divisible, the "modified categorical" approach is appropriate. This approach is employed when a statute provides for alternative means of committing an offense, some violent and some not. Courts may then consult certain materials to determine which version of the statute was implicated. *Descamps*, 133 S. Ct. at 2283–84 ("[T]he modified approach serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction."). The Government would look to the Indictment to show that the Defendants are charged with offenses that involve, as an element of the offense, the attempted use of violent physical force or the threat of violent physical force. The Government contends that even if the modified categorical approach is not employed, the statutes at issue would qualify as a crimes of violence under the force clause. The

---

[1] The motions to dismiss do not address armed bank robbery under § 2113(d), which is also one of the charged predicate offenses. The § 2113(d) charge is first addressed in the reply brief, where the Defendants argue that armed bank robbery can also be committed without the use, attempted use, or threatened use of violent physical force. In support of this claim, the Defendants assert that the "ordinary case" approach is no longer viable, and that without it, armed bank robbery does not satisfy the elements test. For reasons that will be set forth in this Opinion and Order, the Defendants' argument is without merit.

Government's Response also addresses the Defendants' constitutional arguments with respect to the residual clause.

**1.**     *History of the Categorical Approach*

This Court is inclined to agree with reasoning that was set forth by the district court in *United States v. Standberry*,— F. Supp. 3d —, No. 3:15CR102–HEH, 2015 WL 5920008 (E.D. Va. Oct. 9, 2015). In *Standberry*, the defendants argued that a Hobbs Act robbery charge failed to categorically qualify as a predicate crime for purposes of applying 18 U.S.C. § 924(c). The defendants' argument, like the Defendants' argument in this case, was dependent on their assumption that the sufficiency of an indictment to state a crime of violence was only reviewable under the categorical analysis framework, where the court would be constrained by the elements of the underlying statute. This was critical because, in actuality, the indictment alleged that a firearm was brandished and that property was taken by means of actual and threatened force, violence, and fear of injury. It was further alleged that in at least one of the robberies, a firearm was actually discharged. Before addressing the merits of the defendants' argument, the court noted that it was "important to clarify the origin and purpose of the categorical analysis framework." *Id.* at *1. This Court, likewise, looks to the purpose of the categorical approach and questions whether the assumption that it applies to a § 924(c) offense is not misguided.[2]

---

[2] Ultimately, the court "[w]ith some reservation . . . bow[ed] to the wishes of the parties and appl[ied] the categorical approach." 2015 WL 5920008, at *2. It then found that a Hobbs Act robbery, even under the categorical approach, is a crime of violence under the force clause. *Id.* at *4 ("Under a commonsense analysis, any act or threatened act which engenders a fear of injury implicates force and potential violence."). The Court also stated that the Hobbs Act was arguably divisible, so that the modified categorical approach would apply. *Id.* at *6. Under that approach, the court found that the indictment charges for Hobbs Act robbery alleged a crime of violence.

The Supreme Court conceived of the categorical approach in *Taylor v. United States*, 495 U.S. 575 (1990), as a way to address the Armed Career Criminal Act (ACCA). The ACCA deals exclusively with recidivists. It provides for enhanced punishment for a person who is convicted of unlawful possession of a firearm in violation of 18 U.S.C. § 992(g) if that person has three previous convictions for "a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). For purposes of this provision, a "violent felony" is any crime punishable by imprisonment for a term exceeding one year that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(i)–(ii). The Supreme Court concluded that sentencing courts, when deciding whether a defendant's prior conviction counted as one of the ACCA enumerated offenses, like burglary, must look "only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor*, 495 U.S. at 600. The Court provided several justifications for adopting this restrictive categorical approach.

First, it reasoned that the language of § 924(e) supported the inference that "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Id.* This is because the statute referred to a person with three previous "convictions," not to a person who had committed three previous violent felonies. *Id.*; *see also Descamps*, 133 S. Ct. at 2287 ("As we have long recognized, ACCA increases the sentence of a defendant who has three 'previous convictions' for a violent felony—not a defendant who has thrice committed such a

7

crime.") Moreover, the previous felony needed to have "as an element" the use or threat of force—as compared to a crime that "in a particular case, involve[d]" the use or threat of force. *Taylor*, 495 U.S. at 600 (citing 18 U.S.C. § 924(d)(2)(B)(ii).) "Read in this context, the phrase 'is burglary' in § 924(e)(2)(B)(ii) most likely refers to the elements of the statute of conviction, not to the facts of each defendant's conduct." *Id.* at 600–01.

The *Taylor* Court looked, second, to the legislative history of the ACCA:

> There was considerable debate over what kinds of offenses to include and how to define them, but no one suggested that a particular crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case. If Congress had meant to adopt an approach that would require the sentencing court to engage in an elaborate factfinding process regarding the defendant's prior offenses, surely this would have been mentioned somewhere in the legislative history.

*Id.* at 601; *see also Descamps*, 133 S Ct. at 2287 ("Congress instead meant ACCA to function as an on-off switch, directing that a prior crime would qualify as a predicate offense in all cases or in none.").

Third, the Court thought that "the practical difficulties and potential unfairness of a factual approach are daunting." *Taylor*, 495 U.S. at 601. The Court described a litany of problems that could occur if a sentencing court attempted to ascertain the theory of a previously prosecuted case. *Id.*; *see also Descamps*, 133 S. Ct. at 2289 (identifying numerous difficulties and inequities that would follow if sentencing courts were required "to expend resources examining (often aged) documents for evidence that a defendant admitted in a plea colloquy, or a prosecutor showed at trial").

The categorical approach was specifically addressed in the recent *Johnson* opinion in response to the dissent's position that the residual clause of the ACCA could be saved from

vagueness by interpreting it to refer to the risk posed by the particular conduct, not by the ordinary case of the defendant's crime. 135 S. Ct. at 2561–62. Referring to the *Taylor* holding, the Court stated:

> there were good reasons to adopt the categorical approach, reasons that apply no less to the residual clause than to the enumerated crimes. *Taylor* explained that the relevant part of the Armed Career Criminal Act refers to a person who . . . has three previous convictions for—not a person who has committed—three previous violent felonies or drug offenses. This emphasis on convictions indicates that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions. *Taylor* also pointed out the utter impracticability of requiring a sentencing court to reconstruct, long after the original conviction, the conduct underlying that conviction. For example, if the original conviction rested on a guilty plea, no record of the underlying facts may be available. [T]he only plausible interpretation of the law, therefore, requires use of the categorical approach.

Id. at 2562 (alternations in original) (internal quotation marks and citations omitted); *see also Shepard v. United States*, 544 U.S. 13, 20 (2005) ("The *Taylor* Court drew a pragmatic conclusion about the best way to identify generic convictions in jury cases, while respecting Congress's adoption of a categorical criterion that avoids subsequent evidentiary enquiries into the factual basis for the earlier conviction.").

The categorical approach has also been used in applying the portion of the Immigration and Nationality Act (INA) that provides for the deportation of a noncitizen who has been convicted of an "aggravated felony." *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1682 (2013); 8 U.S.C. § 1227(a)(2)(A)(iii). Explaining that the categorical approach had "a long pedigree in our Nation's immigration law," the *Moncrieffe* Court stated: "The reason is that the INA asks what offense the noncitizen was 'convicted' of, 8 U.S.C. § 1227(a)(2)(A)(iii), not what acts he committed. '[C]onviction' is 'the relevant statutory hook.'" 133 S. Ct. at 1685 (footnote omitted)

9

(quoting *Carachuri–Rosendo v. Holder*, 560 U.S. 563, 580 (2010)).

**2.     *The Categorical Approach and § 924(c)***

The categorical and modified categorical frameworks establish the rules by which the government may use prior convictions to enhance certain federal sentences and to deport certain aliens. The categorical approach helps "narrow the scope of recidivist statutes or sentencing guidelines that can impose dramatic enhancements on sentences for those defendants who clearly fall within their intended scope." *United States v. Sonnenberg*, 628 F.3d 361, 367 (7th Cir. 2010) (recognizing the benefit of employing the categorical approach to determine the career offender Guideline enhancement even if it "seem[ed] artificial and abstract"). The reasons for employing the categorical approach as the "only plausible interpretation" of these laws, *Johnson*, 135 S. Ct. at 2562, do not exist outside the context of sentencing under recidivist statutes or enhancements. Section 924(c) is not a recidivist statute, and the Court could locate no binding precedent that attempted to apply the categorical approach to § 924(c). The parties assume that it applies, but they do so without any analysis or acknowledgment of the reason behind the statutory interpretation. *See Shepard*, 544 U.S. at 23 (noting that the categorical approach is an "issue of statutory interpretation").

Section 924(c) differs from the ACCA in significant respects, and nothing in the decisions applying the categorical approach constrain a court to apply it to § 924(c). It contains no mention of prior "convictions," which is the language deemed by the Supreme Court as showing Congressional intent for a sentencing court to look at an offense categorically. In fact, the plain language of § 924(c) requires only that the predicate crime of violence have been

(quoting *Carachuri–Rosendo v. Holder*, 560 U.S. 563, 580 (2010)).

**2.     *The Categorical Approach and § 924(c)***

The categorical and modified categorical frameworks establish the rules by which the government may use prior convictions to enhance certain federal sentences and to deport certain aliens. The categorical approach helps "narrow the scope of recidivist statutes or sentencing guidelines that can impose dramatic enhancements on sentences for those defendants who clearly fall within their intended scope." *United States v. Sonnenberg*, 628 F.3d 361, 367 (7th Cir. 2010) (recognizing the benefit of employing the categorical approach to determine the career offender Guideline enhancement even if it "seem[ed] artificial and abstract"). The reasons for employing the categorical approach as the "only plausible interpretation" of these laws, *Johnson*, 135 S. Ct. at 2562, do not exist outside the context of sentencing under recidivist statutes or enhancements. Section 924(c) is not a recidivist statute, and the Court could locate no binding precedent that attempted to apply the categorical approach to § 924(c). The parties assume that it applies, but they do so without any analysis or acknowledgment of the reason behind the statutory interpretation. *See Shepard*, 544 U.S. at 23 (noting that the categorical approach is an "issue of statutory interpretation").

Section 924(c) differs from the ACCA in significant respects, and nothing in the decisions applying the categorical approach constrain a court to apply it to § 924(c). It contains no mention of prior "convictions," which is the language deemed by the Supreme Court as showing Congressional intent for a sentencing court to look at an offense categorically. In fact, the plain language of § 924(c) requires only that the predicate crime of violence have been

committed; the wording does not even require that the defendant be separately charged with that predicate crime and be convicted of it. *See United States v. Frye*, 402 F.3d 1123, 1127 (11th Cir. 2005); *see also United States v. Camps*, 32 F.3d 102, 108 (4th Cir. 1994) (stating that § 924(c) does not criminalize the underlying predicate offense but rather "proscribes, as a separate and distinct offense, the use or carry of a firearm during the commission of or in relation to these predicate offenses"); *cf. United States v. Moore*, 763 F.3d 900, 910 (7th Cir. 2014) (holding that even if a jury does not convict a defendant of the predicate offense, a conviction under § 924(c) may stand as long as sufficient evidence exists to support it as "such an inconsistent verdict could be chalked up to jury mistake, compromise, or lenity").

More importantly, the statute does not require a sentencing court to make a determination based on a *previous* conviction. To prove a violation of 18 U.S.C. § 924(c)(1)(A), the government must show that the defendant: (1) carried a firearm; (2) committed all the acts necessary to be subject to punishment for a crime of violence; and (3) carried the gun during and in relation to that crime. *United States v. Sandoval*, 347 F.3d 627, 633 (7th Cir. 2003). A jury will be required to find whether the necessary elements have been established beyond a reasonable doubt *in this case*. Therefore, § 924(c) does not implicate any of the problems that exist under the ACCA in having to reconstruct, long after an original conviction, the conduct underlying the predicate offense. "Unlike the retrospective analysis conducted by sentencing courts, trial courts have the benefit of viewing the evidence as it unfolds," *Standberry*, 2015 WL 5920008, at *2, and there is no danger of a "collateral trial," *see Shepard*, 544 U.S. at 23. The Sixth Amendment issues that would be implicated by allowing a sentencing court to go "beyond merely identifying a prior conviction" to make a finding about an ACCA predicate offense and

11

increasing the maximum penalty, *Descamps*, 133 S Ct. at 2288, simply do not apply in the context where a defendant is facing a § 924(c) charge. "The Sixth Amendment contemplates that a jury—not a sentencing court—will find [facts underlying a conviction], unanimously and beyond a reasonable doubt," *id.*, which is exactly the process the Government will be required to follow by indicting the Defendants for a § 924(c) offense.

Here, the Defendants were charged with attempting to take money from employees and customers against their will, "by means of actual and threatened force, violence, and fear of injury, immediate and future, to their person and to money and property in their custody and possession." (Indictment, Count 3, ECF No. 36.) They were also charged with attempting to enter a credit union with the intent to commit bank robbery in violation of 18 U.S.C. § 2113(a) and larceny, and "did put in jeopardy the life of another person by the use of a dangerous weapon." (Indictment, Count 4.) These offenses "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). As long as a jury finds that the Defendants committed all the acts necessary to be subject to punishment for either of these offenses, the second element of a § 924(c) offense is satisfied.

The caselaw is replete with cases where a defendant has been convicted of using a firearm during a crime of violence where the predicate offense is bank robbery. Nothing in the Supreme Court's recent decisions calls this into doubt. And nothing in the statute suggests that congressional intent would be served by finding that bank robbery is not a crime of violence. Quite the opposite is true. For example, Congress amended § 924(c) in the Comprehensive Crime Control Act of 1984 to address the Supreme Court's finding in *Simpson v. United States*,

435 U.S. 6 (1978), that Congress did not intend to authorize application of both the enhancement in § 2113(d) and the consecutive penalty under § 924(c) in the case of a bank robbery committed with a firearm. The amendment added language clarifying that the predicate crime of violence or drug trafficking crime could be one "which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device." 18 U.S.C. § 924(c). Thus, the unambiguous language of § 924(c) makes clear that Congress intended a consecutive penalty even if the underlying felony—like § 2113—has its own enhancement for use of a gun. *United States v. Gonzales*, 520 U.S. 1, 9–10 (1997).

Section 924(c) has been the subject of other Supreme Court decisions. *See, e.g., United States v. O'Brien*, 560 U.S. 218 (2010) (holding that whether a firearm was a machine gun is an element to be proved to a jury, not a sentencing factor); *Alleyne v. United States*, 133 S. Ct. 2151 (2013) (holding that any fact that increases the mandatory minimum, such as whether the firearm was brandished, is an element of the crime that must be submitted to the jury); *Abbott v. United States*, 562 U.S. 8 (2010) (holding that a defendant is subject to the highest mandatory minimum specified for his conduct in § 924(c), unless another provision of law directed to conduct proscribed by § 924(c) imposes an even greater mandatory minimum); *Dean v. United States*, 556 U.S. 568 (2009) (holding that penalty for discharging a firearm under § 924(c)(1)(A)(iii) does not require proof of intent); *Watson v. United States*, 552 U.S. 74 (2007) (holding that a person does not "use" a firearm under § 924(c)(1)(A) when he receives it in trade for drugs); *Muscarello v. United States*, 524 U.S. 125 (1998) (holding that "carry" is not limited to carrying on the person). In no decision has the Court struggled with, or attempted to resolve a Circuit split regarding, the definition of a crime of violence under § 924(c). The complications surrounding

the ACCA simply do not appear to transfer to § 924(c).

The Indictment states all of the elements of the firearm offense, adequately apprises the Defendants of the nature of the charges so that they may prepare a defense, and allows the Defendants to plead the judgment as a bar to any future prosecutions for the same offense. To find the Defendants guilty of Count 5, a jury will not be asked to apply the elements of § 924(c) to an idealized ordinary case of the crime, but to the Defendants' actual conduct in attempting to rob a credit union. If this actual conduct does not involve the requisite element of force as charged, that would impact the merits, which is different than claiming that the Indictment is insufficient.

For all the reasons stated above, the Court is inclined to find that the Indictment adequately states a claim under 18 U.S.C. § 924(c), and that it does not implicate Constitutional concerns. However, because the Court has questioned an assumption made by both parties, and does not have the benefit of the parties' analysis on the issue raised in this Opinion, the Court will invite further briefing before issuing a ruling on the pending motions to dismiss. The supplemental briefing should address whether 18 U.S.C. § 924(c) should be interpreted to require application of the categorical approach that the Supreme Court developed for purposes of applying the ACCA.

**CONCLUSION**

For the reasons stated above, the Court WITHHOLDS RULING on the Motions to Dismiss Count 5 [ECF Nos. 50, 53, 55], filed by Defendants Smith, Sutton, and McCarthy. The Defendants are granted until December 30, 2015, to file a supplemental brief. The Government is

granted until January 27, 2016, to file its supplemental brief.

SO ORDERED on December 1, 2015.

s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT